**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO. 08-80611-CIV-HURLEY/HOPKINS**

**AXA EQUITABLE LIFE**
**INSURANCE COMPANY**,

      **Plaintiff,**

**v.**

**INFINITY FINANCIAL GROUP, LLC, et al.,**

      **Defendants.**
_____/

## ORDER DENYING DEFENDANTS' MOTION TO DISMISS

**THIS CAUSE** comes before the court upon the motion of defendants Harlan Altman Trust Dated September 1, 2006, Walter Glass 2006 Insurance Trust Dated September 1, 2006, Carol Sciolino 2006 Life Insurance Trust Dated December 16, 2006, Kristine M. Neuhauser and NatCity Trust Company of Delaware (the "Delaware Trust Defendants") to dismiss the complaint [DE # 56]. For the reasons given below, the court will deny defendants' motion.

### BACKGROUND

This is a suit for rescission of several insurance policies pursuant to the Florida Insurance Code, and alleging claims of fraud and negligence. The complaint alleges that the defendants collaborated in a scheme to recruit elderly applicants for life insurance policies with large face amounts. According to the complaint, the policies were never meant to be retained by the insured or their family members; rather, from the outset the policies insuring the lives of the applicants were to be paid for and held by outside investors, in violation of state law. The complaint alleges that this was accomplished by making material misrepresentations to the issuer of the policies, plaintiff Axa Equitable Life Insurance Co., and by creating trusts to hold the insurance policies in order to disguise

the policies' true ownership.  Three of those trusts were organized in Delaware, and their trustees are citizens of Delaware as well.  They comprise the group of defendants who filed the instant motion to dismiss.

JURISDICTION

This court has jurisdiction over the subject matter pursuant to 28 U.S.C. § 1332.  Venue is proper in this court pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events giving rise to plaintiff's claim occurred in the Southern District of Florida.

DISCUSSION

**A.    *Standard on Motion to Dismiss***

Granting a motion to dismiss is appropriate when a complaint contains simply "a formulaic recitation of the elements of a cause of action." *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).  To survive a motion to dismiss, a complaint must contain factual allegations that "raise a reasonable expectation that discovery will reveal evidence" in support of the claim and that plausibly suggest relief is appropriate.  *Id.*  On a motion to dismiss, the complaint is construed in the light most favorable to the non-moving party, and all facts alleged by the non-moving party are accepted as true. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Wright v. Newsome,* 795 F.2d 964, 967 (11th Cir. 1986).  The threshold is "exceedingly low" for a complaint to survive a motion to dismiss for failure to state a claim upon which relief can be granted. *See Ancata v. Prison Health Servs., Inc.,* 769 F.2d 700, 703 (11th Cir. 1985).  Regardless of the alleged facts, a court may dismiss a complaint on a dispositive issue of law.  *See Marshall County Bd. Of Educ. v. Marshall County Gas Dist.,* 992 F.2d 1171, 1174 (11th Cir. 1993).

**B.    *Defendants' Motion to Dismiss***

2

1.    *Personal Jurisdiction*

The Delaware Trust Defendants first argue that they must be dismissed from this action because the court lacks personal jurisdiction over them.

When sitting in diversity, a federal court must undertake a two-step process in determining whether personal jurisdiction exists.  The court must determine whether: (1) jurisdiction over the defendant is conferred by the state long-arm statute; and, if so, whether (2) the exercise of jurisdiction would not violate the Due Process Clause of the Fourteenth Amendment.  *See United Technologies Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009).

A Florida court has specific personal jurisdiction over a non-resident of Florida to determine a cause of action arising from the non-resident's commission of a tortious act in Florida.  *See* Fla. Stat. § 48.193(1)(b).  The Florida Supreme Court has held that, for purposes of the long-arm statute, a non-resident may commit a tortious act in Florida "through the nonresident defendant's telephonic, electronic, or written communications into Florida." *Wendt v. Horowitz*, 822 So.2d 1252, 1260 (Fla. 2002).  Federal courts, including the Eleventh Circuit Court of Appeals, have acknowledged and applied the Florida Supreme Court's holding in *Wendt*.  *See Internet Solutions Corp. v. Marshall*, – F.3d –, 2009 WL 311301 at *2 (11th Cir. 2009); *Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*, 421 F.3d 1162, 1168 (11th Cir. 2005).

Kristine M. Neuhauser, formerly an employee of NatCity Trust Company of Delaware, the trustee of the three Delaware Trusts, submitted an affidavit stating that no telephonic, written, or electronic communications were transmitted to anyone in Florida in relation to the three life insurance policies housed by the trusts.  Neuhauser Aff. ¶ 6.  This affidavit evidence in opposition to personal jurisdiction shifts the burden back to the plaintiff to produce evidence in favor of

jurisdiction.  *See Mazer*, 556 F.3d at 1274, 1277; *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1268 (11th Cir. 2002).

Here, the court concludes plaintiff has not met its burden in this regard.  One of the insureds, Carol Sciolino, is a resident of Boynton Beach, Florida.  Sciolino submitted a sworn statement describing her recruitment by Brasner, and her understanding that the premiums were to be financed by third parties, and that she would immediately assign the policy to a third party in exchange for a fee.  *See* DE 96-3.  But neither the Sciolino statement, nor any other evidence submitted by plaintiff, identifies any specific communications made between the Delaware Trust Defendants and any person or entity in Florida.  Thus plaintiff has not rebutted the evidence submitted by the Delaware Trust Defendants, in the form of the Neuhauser affidavit, that there were no such communications.

However, this is not the end of the analysis.  Plaintiff has also alleged that the Delaware Trust Defendants are liable for engaging in a civil conspiracy with the other defendants in the case.  *See* Am. Compl. ¶ 125-132.  Florida law construes the state's long-arm statute to reach all of the alleged participants in a civil conspiracy, at least one act in furtherance of which is committed in Florida. *See Machtinger v. Inertial Airline Services, Inc.*, 937 So.2d 730, 734-36 (Fla. 3d DCA 2006); *Wilcox v. Stout*, 637 So.2d 335, 336 (Fla. 2d DCA 1994).  Florida courts may exercise personal jurisdiction over parties to a Florida civil conspiracy even if the alleged civil conspirator otherwise has no connection to the state.  *See Mazer*, 556 F.3d at 1281-82.

In this case, the complaint as a whole describes a large conspiracy to fraudulently cause plaintiff to issue several life insurance policies based on material misinformation.  The majority of the defendants, including Brasner, Kevin H. Bechtel, and Gary Richardson, and at least two of the

insured, Harlan Altman and Carol Sciolino, are alleged to be citizens of Florida. *See* Am. Compl. ¶ 11, 12, 18, 21. The entities controlled by Brasner are also alleged to be Florida residents. *See id.* ¶ 6-9. One of the insurance policies alleged to be fraudulently obtained was issued to Sciolino at her residence in Florida. *See* DE # 96-5. Thus, the complaint as a whole sufficiently alleges that the defendants formed a civil conspiracy, at least some acts in furtherance of which were carried out in Florida. Florida's long-arm statute therefore reaches all participants in that conspiracy, even those not otherwise connected to Florida, such as the Delaware Trust Defendants. *Cf. Arch Aluminum & Glass Co. v. Haney*, 964 So.2d 228, 234-35 (Fla. 4th DCA 2007) (finding personal jurisdiction not supported because "the tort did not occur in Florida, and *neither did the conspiracy*") (emphasis added).

The court is further satisfied that exercise of personal jurisdiction over the Delaware Trust Defendants would not be contrary to the Due Process Clause of the Fourteenth Amendment to the United States Constitution. The Delaware Trust Defendants may not be sued in Florida unless their contacts with the state are such that they had "fair warning" that they could be subject to suit in Florida. *See Licciardello v. Lovelady*, 544 F.3d 1280, 1284 (11th Cir. 2008). The Delaware Trust Defendants must have been reasonably able to anticipate being sued in a Florida court. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). The exercise of jurisdiction must be consistent with "fair play and substantial justice," as determined in light of factors such as the burden on the defendant of litigating in the forum, the forum's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, and the judicial system's interest in resolving the dispute. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980); *International Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945).

The Eleventh Circuit has held that allegations of intentional torts support the exercise of personal jurisdiction over a nonresident defendant with no other contacts with the forum. *See Licciardello*, 544 F.3d at 1285. As just discussed, the amended complaint alleges that the Delaware Trust Defendants participated in a conspiracy to cause plaintiff to issue life insurance policies based on fraudulent applications. Many of the co-conspirators and several of the named insured are Florida residents. The allegations of the complaint are sufficient to permit the inference that the Delaware Trust Defendants "purposely directed" their activities at residents of the forum. *See Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984).

Moreover, many of the factors enumerated in *Woodson* weigh in favor of permitting a Florida court to exercise jurisdiction over the Delaware Trust Defendants. There appears to be no particularly significant burden on the Delaware Trust Defendants from litigating in Florida. The plaintiff, meanwhile, has a substantial interest in obtaining convenient and effective relief by asserting its claims against all defendants in a single action. Florida is the most logical forum for such an action in light of the many defendants that reside in the state. Finally, because its citizens are alleged to be involved in the scheme, both as insurance brokers and insureds, Florida and its courts have a significant interest in resolving this dispute.

In sum, the Florida long-arm statute confers personal jurisdiction over the Delaware Trust Defendants in this case, and the exercise of jurisdiction over the Delaware Trust Defendants would not violate the United States Constitution. The motion to dismiss for lack of personal jurisdiction must therefore be denied.

2.     *Failure to State a Claim*

The Delaware Trust Defendants next argue that several of plaintiff's claims against them

must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

Count I asserts a claim for rescission of an insurance contract due to a fraudulent misrepresentation in an application pursuant to Fla. Stat. § 627.409.  That section provides that a "misrepresentation, omission, concealment of fact, or incorrect statement" may constitute grounds for rescission, provided certain conditions are met.  The Delaware Trust Defendants argue that the amended complaint does not allege that they made any misrepresentations that would permit plaintiff to rescind the policies under the statute.

It is true that the role of the Delaware Trusts in the scheme alleged in the amended complaint was to hold the life insurance policies after they were issued.  The amended complaint does not allege that the trusts themselves made the misrepresentations based upon which the policies were allegedly issued.  However, an assignment of an insurance policy places the assignee in the same status with respect to all rights and liabilities under it which the insured occupied before the transfer; the assignee is effectively substituted as the insured.  *See* 30A Fl. Jur. 2d Insurance § 1566; *Pendas v. Equitable Life Assurance Soc'y of U.S.*, 176 So. 104, 110 (Fla. 1937); *Moon v. Williams*, 135 So. 555, 557 (Fla. 1931).  Therefore, if the policies were subject to rescission under their original ownership, they may be rescinded notwithstanding their assignment to the Delaware Trusts.  Thus, because the Delaware Trusts are now the owners of the policies which may be subject to rescission, they are properly joined as defendants even though plaintiff makes no allegation that the Delaware Trust Defendants themselves made any misrepresentations.  The motion to dismiss Count I will be denied.

Count II alleges that the insurance policies are void for lack of an insurable interest.  *See* Fla. Stat. § 627.404(1) ("[N]o person shall procure or cause to be procured or effected an insurance

contract on the life or body of another individual unless the benefits under such contract are payable to the individual insured or his or her personal representatives, or to any person having, at the time such contract was made, an insurable interest in the individual insured.  The insurable interest need not exist after the inception date of coverage under the contract.").  The Delaware Trust Defendants emphasize the last sentence in subsection (1) – that the insurable interest need not exist after the inception date of coverage.  They argue that because the amended complaint alleges that the insureds procured the insurance before assigning them to the Delaware Trusts, no violation of § 627.404 has been pled.

Florida permits the assignment of life insurance policies to persons without an insurable interest in the life of the insured.  *See, e.g.*, *Great West Life Assur. Co. v. Greene*, 678 So.2d 385 (Fla. 3d DCA 1996) (involving a life insurance policy assigned as part of a divorce settlement); *Lewis State Bank v. Travelers Ins. Co.*, 356 So.2d 1344 (Fla. 1st DCA 1978) (policy assigned to bank as security for loan); *Travelers Ins. Co. v. Tallahassee Bank & Trust Co.*, 133 So.2d 463 (Fla. 1st DCA 1961) (same).  But this rule extends only to assignments made in good faith, and not to sham assignments made simply to circumvent the law's prohibition on "wagering contracts."  *See Wages v. Wages*, 42 S.E.2d 155, 161 (Ga. 1947) (disapproving assignment of a policy where "the insured was but incidentally a party to a transaction which in its inception was contrary to public policy"); *Chamberlain v. Butler*, 86 N.W. 481, 483 (Neb. 1901) (allowing assignments of policies "taken out in good faith, and afterwards assigned in good faith," but not where the agreement to assign the policy existed "prior to the issuance of the policy, or contemporaneously therewith"); *Steinback v. Diepenbrock*, 52 N.E. 662 (N.Y. 1899) ("The insured, instead of taking out a policy payable to a person having no insurable interest in his life, can take it out to himself and at once assign it to such

8

a person.  But such an attempt would not prove successful, for a policy issued and assigned, under

such circumstances, would be none the less a wagering policy because of the form of it.").

Assuming the truth of the allegations of the amended complaint as true, as the court must at

this stage, the procurement and the assignment of the policies was not done in good faith, but was

part of a scheme devised by defendants to obtain interests in insurance policies, not yet issued, that

insured lives in which the defendants had no insurable interest.  *See* Am. Compl. ¶ 44-47, 68-70,

77-79, 87-89  (alleging that defendant Brasner falsely represented on the application for each of the

policies that the owner had no present intent to sell the policy as part of a viatical settlement).[1]  If the

plaintiff's allegations are true, the insured never planned to maintain the policies themselves.  Rather,

the policies were procured only as part of a plan established from the outset, under which third

parties were to pay the premiums for the policies and the insured would immediately assign their

policies to entities in which other parties would maintain interests.  Thus, the amended complaint

adequately states allegations that, if proven, would render the policies void for lack of an insurable

interest.  *See, e.g.*, *Lakin v. Postal Life & Cas. Ins. Co.*, 316 S.W.2d 542, 552 (Mo. 1958) (rejecting

the argument that a life insurance policy was validly assigned to a person with no insurable interest

where the putative assignee "personally paid the premium [and] simultaneously made arrangements

to be designated as beneficiary and to have the policy assigned to him . . . .  This unquestionably

constituted one transaction whereby appellant caused to be issued for his own benefit a policy of

---

[1]  Although not necessary in light of the rule requiring the court to credit the allegations in the complaint in deciding a motion to dismiss, the court notes that the allegations are at least somewhat corroborated by the sworn statement of Carol Sciolino, who stated generally that she never intended to keep the policy, but pursuant to a plan developed by Brasner, intended from the outset to sell the policy immediately after it was issued in exchange for a payment.  *See* DE # 96-3 at 19-21, 24-26, 30-33.

insurance, for which he paid the premium, on the life of [another person] in which he had no insurable interest."). The motion to dismiss Count II must therefore be denied.

Count III alleges a common-law claim of fraud. The Delaware Trust Defendants argue that it must be dismissed for failure to plead the allegations with the specificity required by Fed. R. Civ. P. 9(b). This argument is without merit.

"Rule 9(b) is satisfied if the complaint sets forth (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1237 (11th Cir. 2008) (quoting *Tello v. Dean Witter Reynolds, Inc.*, 494 F.3d 956, 972 (11th Cir. 2007)) (internal quotations omitted).

The amended complaint clearly identifies the misrepresentations made with respect to each insurance policy; the time and place of each (i.e., the application for issuance of the policy); the person responsible for making each misrepresentation and the contents of the statements; and what the defendants obtained as a consequence (issuance of the policy, and in the case of the broker defendants, commissions associated therewith). *See* Am. Compl. ¶ 33-94. The allegations of the amended complaint thus satisfy Rule 9(b)'s heightened pleading requirements, and the motion to dismiss Count III must be denied. *Cf. American United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1064-65 (affirming Rule 9(b) dismissal of claims that insurance policies were fraudulently procured, where the party asserting the claim "presented only general conclusory allegations of fraud").

The Delaware Trust Defendants' motion to dismiss Counts IV and V, which assert claims

10

Order Denying Defendants' Motion to Dismiss
Axa Equitable Life Ins. Co. v. Infinity Financial Group, LLC et al.
Case No. 08-80611-CIV-HURLEY/HOPKINS

of civil conspiracy and aiding and abetting fraud, must likewise be denied. *Martinez*, in which the Eleventh Circuit upheld the dismissal of a civil conspiracy claim asserted against the owners of allegedly fraudulently obtained life insurance policies, is distinguishable because in that case the insurers "did not explain how the [policy owners] knew that the policies had been procured by fraud." 480 F.3d at 1068. By contrast, in this case plaintiff has alleged that the trusts were the owners of the policies either from the beginning, as in the case of Geoffrey Glass, *see* Am. Compl. ¶ 64-65, or immediately after the issuance of the policy, as in the case of Harlan Altman, Walter Glass and Carol Sciolino, *see* Am. Compl. ¶ 49, 80, 90. Thus the amended complaint adequately alleges that the trusts both participated in a civil conspiracy to obtain fraudulently procured insurance policies, and aided and abetted that conspiracy.

## CONCLUSION

For the reasons given above, the court concludes that the exercise of personal jurisdiction over the Delaware Trust Defendants is proper, and that Counts I - V of the amended complaint state valid claims against the Delaware Trust Defendants. Accordingly, it is hereby **ORDERED** and **ADJUDGED** that:

1.     Defendants' motion to dismiss the complaint [DE # 56] is **DENIED**.

**DONE** and **SIGNED** in Chambers at West Palm Beach, Florida this 31st day of March, 2009.

Daniel T. K. Hurley
United States District Judge

*Copies furnished to counsel of record*

For updated court information, visit unofficial Web site
at http://us.geocities.com/uscts